```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                   :
  UNITED STATES OF AMERICA
                                   :   INDICTMENT
          - v. -
                                   :   16 Cr. 776 (VEC)
  ALAIN KALOYEROS,
      a/k/a "Dr. K,"               :
  STEVEN AIELLO,
  JOSEPH GERARDI,                  :
  LOUIS CIMINELLI, and
  MICHAEL LAIPPLE,                 :

                  Defendants.      :
- - - - - - - - - - - - - - - - - x
```

## OVERVIEW

1.  As described more fully below, the charges in this Indictment stem from a criminal scheme involving fraud in the award of hundreds of millions of dollars in New York State (the "State") contracts. Specifically, ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, who was the head of SUNY Polytechnic Institute ("SUNY Poly"), a State-funded public university, worked with Todd Howe and STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, to secretly rig the bidding process for State contracts worth hundreds of millions of dollars in favor of the companies owned and managed by AIELLO, GERARDI, CIMINELLI, and LAIPPLE.

RELEVANT INDIVIDUALS AND ENTITIES

*CNSE, SUNY Poly, and Fort Schuyler*

2.   The College of Nanoscale Science and Engineering ("CNSE") was a public institution of higher education that was funded in part by the State.  In or around September 2014, CNSE merged with the State University of New York Institute of Technology to become a new public university known as SUNY Poly (referred to here collectively with CNSE as "SUNY Poly").  SUNY Poly is a public institution of higher education located principally in Albany, New York, that is part of the New York State University system (the "SUNY System"). The SUNY System is funded in part by the State.

3.   In or around 2009, Fort Schuyler Management Corporation ("Fort Schuyler"), located in Albany, New York, was created as a non-profit real estate corporation affiliated with SUNY Poly that could enter into contracts with private companies on SUNY Poly's behalf, for the purpose of carrying out development projects paid for with State funding.  Fort Schuyler was governed by a Board of Directors, which, among other things, was charged with selecting private companies to partner with Fort Schuyler in SUNY Poly-related development projects. Certain public funding for SUNY Poly came through the Research Foundation for the State University of New York (the "Research Foundation"), which paid, at least in part, the salaries of many

2

individuals affiliated with SUNY Poly and Fort Schuyler, including ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, and Todd Howe (as a retained consultant), during the times relevant to this Indictment.

*ALAIN KALOYEROS*

4.   ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, served as the head of SUNY Poly at all times relevant to this Indictment.  KALOYEROS also served as a member of the Board of Directors of Fort Schuyler.  KALOYEROS selected and provided direction to Fort Schuyler's officers and others working on behalf of Fort Schuyler.

*Todd Howe*

5.   Todd Howe has held several public positions, including working for the Governor of New York when the Governor was United States Secretary of Housing and Urban Development, and for a former Governor of New York, who was the father of the current Governor.

6.   During all times relevant to this Indictment, Howe was the president and primary employee of a government relations and lobbying firm (the "Government Relations Firm") that had an office located in Washington, D.C.

7.   Beginning in or about 2012, Howe was retained as a consultant to SUNY Poly.  In his role as a consultant for SUNY Poly, Howe served as a close advisor to ALAIN KALOYEROS, a/k/a

3

"Dr. K," the defendant, and maintained an office at SUNY Poly in Albany, New York.  Howe acted on behalf of SUNY Poly with respect to, among other things, SUNY Poly's development projects, including large, State-funded development projects in Syracuse and Buffalo, New York.  Howe also served as a primary liaison between SUNY Poly and the Governor's senior staff.

8.   At various times relevant to this Indictment, Howe also was retained by and received payments from (a) a large real estate development firm located in Syracuse, New York (the "Syracuse Developer") and (b) a large Buffalo-based construction and development company (the "Buffalo Developer").

*STEVEN AIELLO, JOSEPH GERARDI, and the Syracuse Developer*

9.   At all times relevant to this Indictment, the Syracuse Developer, through various corporate affiliates, built, owned, and managed real estate in and around New York State.  In or around December 2013, the Syracuse Developer was awarded a contract with Fort Schuyler to serve as the preferred developer for projects of SUNY Poly to be created in Syracuse, New York. This contract permitted the Syracuse Developer to be chosen for SUNY Poly development projects of any size in or around Syracuse without further competitive bidding, and, indeed, shortly thereafter, the Syracuse Developer received a contract worth approximately $15 million to build a film studio (the "Film Studio"), and in or around October 2015, the Syracuse Developer

4

received a contract worth approximately $90 million to build a manufacturing plant, both in the vicinity of Syracuse, New York.

10. STEVEN AIELLO, the defendant, was a founder of the Syracuse Developer and served as its President during all times relevant to this Indictment.

11. JOSEPH GERARDI, the defendant, was a founder of the Syracuse Developer and served as its General Counsel during all times relevant to this Indictment.

*LOUIS CIMINELLI, MICHAEL LAIPPLE, and the Buffalo Developer*

12. At all times relevant to this Indictment, the Buffalo Developer provided construction management and general contracting services on various public and private projects in the State. In or around January 2014, the Buffalo Developer was named by Fort Schuyler as a preferred developer for projects of SUNY Poly to be built in Buffalo, New York. This award permitted the Buffalo Developer to be chosen for SUNY Poly development projects of any size in or around Buffalo without further competitive bidding, and, indeed, in or around March 2014, as a result of its position as a preferred developer, the Buffalo Developer received a contract worth approximately $225 million to build a manufacturing plant in Buffalo, New York. That contract ultimately expanded to be worth approximately $750 million.

13. LOUIS CIMINELLI, the defendant, was the Chairman and CEO of the Buffalo Developer, and served in that role at all times relevant to this Indictment.

14. MICHAEL LAIPPLE, the defendant, was the President of a division of the Buffalo Developer that focused, among other things, on initiatives involving public-private infrastructure projects, and served in that role at all times relevant to this Indictment.

## THE BUFFALO BILLION FRAUD SCHEME

15. As part of the criminal scheme alleged in this Indictment, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, and Todd Howe devised a plan to secretly rig Fort Schuyler's bidding process so that State contracts that were ultimately worth hundreds of millions of dollars would be awarded to the Syracuse Developer and the Buffalo Developer.

16. As part of their plan, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, had Fort Schuyler issue two requests for proposals (the "RFPs"), one for Syracuse (the "Syracuse RFP") and one for Buffalo (the "Buffalo RFP"), that would give the appearance of an open competition to choose "preferred developers" in Syracuse and Buffalo, respectively. However, the Syracuse Developer and the Buffalo Developer had been preselected by Howe and KALOYEROS to become the preferred

developers, after the Syracuse Developer and the Buffalo Developer had each made sizeable contributions to the Governor's reelection campaign and had begun paying Howe in exchange for Howe's influence over the RFP processes.  These preferred developer contracts were particularly lucrative for the Syracuse Developer and the Buffalo Developer, as the Syracuse Developer and the Buffalo Developer were then entitled to be awarded future development contracts of any size in Syracuse or Buffalo, respectively, without additional competitive bidding, and thus without competing on price or qualifications for particular projects.

17.  To carry out their criminal scheme, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," the defendant, agreed to and did provide secret information concerning the Syracuse RFP to STEVEN AIELLO and JOSEPH GERARDI, the defendants, including advance copies of the RFP that were provided to no other developers. Howe and KALOYEROS also worked with AIELLO and GERARDI to secretly tailor the Syracuse RFP to include qualifications that would favor the Syracuse Developer in Fort Schuyler's selection process for the Syracuse RFP.  Similarly, further to carry out their criminal scheme, Howe and KALOYEROS agreed to and did provide secret information regarding the Buffalo RFP to LOUIS CIMINELLI and MICHAEL LAIPPLE, the defendants, including advance copies of the RFP that were provided to no other developers, as

7

well as information regarding the location and purpose of the first preferred developer project – information that likewise was provided to no other developer.  Howe and KALOYEROS also worked with CIMINELLI and LAIPPLE to secretly tailor the Buffalo RFP to include qualifications that would favor the Buffalo Developer in Fort Schuyler's selection process for the Buffalo RFP.  Furthermore, KALOYEROS, Howe, STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, collaborated in secretly tailoring the Syracuse and Buffalo RFPs by, among other things, exchanging through Howe ideas for potential qualifications to be included in the Syracuse and Buffalo RFPs.

        18.  As part of their criminal scheme, Todd Howe and ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, deceived and concealed material information regarding the drafting and selection process related to the RFPs from Fort Schuyler and its Board of Directors in the following ways, among others, and thereby exposed Fort Schuyler to risk of economic harm:

        a.  KALOYEROS falsely represented to Fort Schuyler and its Board of Directors that the bidding processes for the Syracuse RFP and the Buffalo RFP were fair, open, and competitive, when in truth and in fact, KALOYEROS and Howe had designed the RFPs so that the Syracuse Developer would be

awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP.

        b.    The Syracuse Developer falsely certified that no one was retained, employed, or designated by or on behalf of the Syracuse Developer to attempt to influence the procurement process, when, in truth and in fact, the Syracuse Developer had retained Howe to influence the procurement process.

        c.    The Buffalo Developer falsely certified that no one was retained, employed, or designated by or on behalf of the Buffalo Developer to attempt to influence the procurement process, when, in truth and in fact, the Buffalo Developer had retained Howe to influence the procurement process.

        19.    In the course of, and in furtherance of, the criminal scheme, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, and Todd Howe, as well as others, including employees of SUNY Poly and Fort Schuyler, exchanged interstate emails and telephone calls with individuals located in Manhattan, New York, including (i) the then-assistant secretary for economic development for New York State (the "Assistant Secretary"), who worked part-time at the Governor's offices in Manhattan, New York; and (ii) Manhattan-based employees of the Empire State Development Corporation, which is the State's main

economic development agency and was the administrator of funding for certain development projects awarded to the Syracuse Developer and to the Buffalo Developer.

20.  As a result of the criminal conduct alleged herein, the Syracuse Developer was awarded two State contracts worth a total of approximately $105 million, and the Buffalo Developer was awarded a State contract that was ultimately worth approximately $750 million.

COUNT ONE

(Wire Fraud Conspiracy – The Preferred Developer RFPs)

The Grand Jury charges:

21.  The allegations contained in paragraphs 1 through 20 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

22.  From at least in or about 2013, up to and including in or about 2015, in the Southern District of New York and elsewhere, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Section 1343 of Title 18, United States Code.

23.  It was a part and an object of the conspiracy that ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, JOSEPH

GERARDI, LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, and others known and unknown, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, KALOYEROS, AIELLO, GERARDI, CIMINELLI, LAIPPLE, and their co-conspirators, devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding processes leading to the award of certain significant taxpayer-funded development contracts were fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with AIELLO, GERARDI, CIMINELLI, and LAIPPLE, used their official positions to secretly tailor the requests for proposals ("RFPs") for those contracts so that companies that were owned, controlled, and managed by AIELLO, GERARDI, CIMINELLI, and LAIPPLE would be favored to win in the selection process for the contracts, and did transmit and cause

to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Section 1349.)

COUNT TWO

(Wire Fraud – The Syracuse RFP)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 11 and 15 through 20 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

25. From in or about 2013, up to and including in or about 2015, in the Southern District of New York and elsewhere, ALAIN KALOYEROS, a/k/a "Dr. K," STEVEN AIELLO, and JOSEPH GERARDI, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, KALOYEROS, AIELLO, and GERARDI devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding process for the Syracuse Preferred Developer

12

contract was fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with AIELLO and GERARDI, used their official positions to secretly tailor the RFP for the contract so that the Syracuse Developer, which was owned, controlled, and managed by AIELLO and GERARDI, would be favored to win in the selection process for the contract, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

(Wire Fraud – The Buffalo RFP)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 8 and 12 through 20 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

27. From in or about 2013, up to and including in or about 2015, in the Southern District of New York and elsewhere, ALAIN KALOYEROS, a/k/a "Dr. K," LOUIS CIMINELLI, and MICHAEL LAIPPLE, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio

13

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, KALOYEROS, CIMINELLI, and LAIPPLE, devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding process for the Buffalo Preferred Developer contract was fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with CIMINELLI and LAIPPLE, secretly used their official positions to tailor the RFP for the contract so that the Buffalo Developer, which was owned, controlled, and managed by CIMINELLI and LAIPPLE, would be favored to win in the selection process for the contract, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR

(False Statements to Federal Officers)

The Grand Jury further charges:

28.  The allegations contained in paragraphs 1 through 11 and 15 through 20 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

29. On or about June 21, 2016, in the Southern District of New York and elsewhere, STEVEN AIELLO, the defendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, AIELLO, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in tailoring the Syracuse RFP for the benefit of his company, the Syracuse Developer, when, in truth and in fact, AIELLO conspired to tailor and did tailor the Syracuse RFP for the benefit of his company.

(Title 18, United States Code, Section 1001(a)(2).)

COUNT FIVE

(False Statements to Federal Officers)

The Grand Jury further charges:

30. The allegations contained in paragraphs 1 through 11 and 15 through 20 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

31. On or about June 21, 2016, in the Southern District of New York and elsewhere, JOSEPH GERARDI, the defendant, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the

15

Government of the United States, to wit, GERARDI, while meeting with federal agents and representatives of the United States Attorney's Office for the Southern District of New York, made statements denying involvement in tailoring the Syracuse RFP for the benefit of his company, the Syracuse Developer, when, in truth and in fact, GERARDI conspired to tailor and did tailor the Syracuse RFP for the benefit of his company.

    (Title 18, United States Code, Section 1001(a)(2).)

_____    _____
FOREPERSON                                JOON H. KIM
                                               Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**ALAIN KALOYEROS, a/k/a "Dr. K,"
STEVEN AIELLO, JOSEPH GERARDI, LOUIS
CIMINELLI, and MICHAEL LAIPPLE,**

**Defendants.**

---

**INDICTMENT**

16 Cr. 776 (VEC)

(18 U.S.C. Sections 1349, 1343,
1001(a)(2) and 2.)

JOON H. KIM
Acting United States Attorney.

---