*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 1, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Alain Kaloyeros, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

      The Government writes in further response to the request made by the Court during the May 29, 2018 pretrial conference for additional clarity regarding the Government's theory of wire fraud. As described on the record, and as set forth further below, the Government expects to prove at trial that defendant Alain Kaloyeros steered large, State-funded contracts to his co-conspirators' companies by falsely representing to the administrator of those contracts, Fort Schuyler Management Corporation, that those companies were selected by a competitive request for proposals process. In fact, Kaloyeros and his co-conspirators designed and used the process to limit competition and to ensure that LPCiminelli and COR Development received the contracts, which they did. In doing so, and by representing that the companies were selected as a result of a competitive process rather than collusion, Kaloyeros, and his co-conspirators, deprived Fort Schuyler of potentially valuable economic information—that is, information that was relevant to Fort Schuyler's economic decision-making. *United States v. Finazzo*, 850 F.3d 94, 115 (2d Cir. 2017); *United States v. Binday*, 804 F.3d 558, 574 (2d Cir. 2015).

      This pattern falls squarely within the cases in which the Second Circuit has affirmed wire fraud convictions premised on the right-to-control theory. Most recently, in *Finazzo*, the Court of Appeals considered circumstances where an insider defrauded his company by directing business to a company in which he had a financial interest, without disclosing that fact. 850 F.3d at 97-98. In affirming the conviction, the court examined its precedents regarding the scope of the right-to-control theory, and concluded that "the 'right to control' one's assets is injured when a victim is deprived of potentially valuable economic information it would consider valuable in deciding how to use its assets," because "[d]epriving a victim of 'potentially valuable' information *necessarily* creates a risk of tangible economic harm." *Id.* (quotation marks omitted).

      In short, *Finazzo* teaches that a corporate victim is defrauded of its right to control its assets when an insider with an interest in a vendor misrepresents that relationship to induce the company into engaging in a transaction with the vendor, because the information regarding that insider's relationship to the vendor is economically valuable. The Second Circuit's opinion in *United States v. Viloski*, 557 F. App'x 28 (2d Cir. 2014), is much the same. In that case, the defendants also

engaged in a kickback scheme where an insider received payments and the relationship was not disclosed to the corporate victim. *Id.* at 31; *see also United States v. Viloski*, 814 F.3d 104, 107 (2d Cir. 2016). The Court of Appeals affirmed the conviction, holding that "[t]he District Court's instructions appropriately instructed the jury that it could find the element of deprivation of property 'if you find beyond a reasonable doubt that an employee or officer of [the victim company] either failed to disclose or inaccurately reported *economically material information* that the officer or employee had reason to believe would have caused [the victim company] to change its business conduct.'" *Viloski*, 557 F. App'x at 34 (emphasis in *Viloski*). The Court went on to uphold the conviction, noting that "the deprivation of information regarding [the defendant's] kickbacks was material and potentially could result in tangible harm because [the victim company] could have negotiated better deals for itself." *Id.*

The facts at issue here are much the same as in *Finazzo* and *Viloski*. An insider—here, Kaloyeros—with a personal interest in awarding contracts to particular companies steered business to those companies and lied about the basis for those awards, claiming that they were based on competitive RFPs, when in fact they were guided by Kaloyeros through collusive and anti-competitive conduct. Indeed, the Government expects that the evidence at trial will demonstrate that Kaloyeros had personal motivation to direct business to LPCiminelli and COR Development; that Kaloyeros conspired with others, including his co-defendants, to limit competition and ensure that those companies received the contracts; and that Kaloyeros caused the Board of Directors of Fort Schuyler to believe that the contracts were awarded after a competitive process. He did so by engaging in a purportedly competitive but in fact rigged process to name LPCiminelli and COR Development as "preferred developers," and then award them contracts worth millions of dollars. At each step—when the Preferred Developer RFPs were issued, when LPCiminelli and COR Development were selected, and when they entered into contracts with Fort Schuyler—the Board issued resolutions indicating their understanding that the awards stemmed from a competitive procurement process. Thus, the step of naming LPCiminelli and COR Development "preferred developers" was simply part of a fraudulent scheme to guide contracts to those companies. In fact, unlike in *Finazzo* and *Viloski*, Kaloyeros did not just omit that he had personal reasons to push Fort Schuyler's contracts to these companies, he affirmatively caused Fort Schuyler to believe that LPCiminelli and COR Development were selected through a legitimate, competitive RFP process. Had the Board known that in fact Kaloyeros had conspired to steer the contracts to *his* preferred developers rather than engaged in a competitive process to select the best developer for Fort Schuyler, it may well have considered whether other developers would provide higher quality services or have negotiated better deals for itself, just as in *Finazzo* and *Viloski*.

Counsel for Louis Ciminelli, in his motion *in limine*, recognizes the analogy to *Finazzo*, but asserts that "it would not be a federal fraud crime absent proof that the rigged bid caused [the corporate victim] tangible economic harm—*i.e.*, absent proof that it 'increas[ed] the price the victim paid for a good' or resulted in the victim receiving 'lower-quality goods than it otherwise could have received.'" (Ciminelli Mot. 3 (Dkt. No. 631).) This claim overstates *Finazzo*'s holding and misstates the law of this circuit. As the Court of Appeals made clear in *Binday*, "[b]ecause the mail and wire fraud statutes do not require a showing that the contemplated harm actually materialized, . . . it suffices that the misrepresentations were relevant to the insurers' economic decision-making." 804 F.3d at 574; *see also Finazzo*, 850 F.3d at 109 (providing that an omission gives rise to liability under the right-to-control theory when "the omission *can or does* result in some tangible harm"); *Viloski*, 557 F. App'x at 33-44 (explaining that the victim need only be

2

deprived of *potentially* valuable information "'that *could* impact on [a business's] spending of funds'" (emphasis in *Viloski*)).

Indeed, it has long been the law of this circuit that the question is not whether the misrepresentation in fact resulted in a higher price or lower quality, but whether the misrepresentation deprived the victim of information necessary to determine for itself whether to make an economic decision. *United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 2007). Thus, in *Carlo*, it was not necessary to prove that false and misleading information that the defendant gave to potential investors regarding the status of his funding efforts actually affected the investors' profits; it sufficed that that information could have affected their decision-making in assessing the investment. *Id.* at 802. In *Binday*, it was not necessary to prove that a certain type of life insurance policy fraudulently sold as a different type of policy actually had a lower value as long as the misrepresentation was relevant to the victim's "economic decision-making because [it] believed that the . . . policies differed economically." 804 F.3d at 574. In *United States v. Levis*, it was not necessary to prove that an internal valuation of a company provided to prospective investors was incorrect or changed the actual value of the stock where the misrepresentation was that the company's valuation was determined by two independent evaluators because that misrepresentation might cause investors to put more weight on the valuation. 488 F. App'x 481, 486 (2012). In *United States v. Dinome*, it did not matter that misrepresentations on a mortgage application did not actually have any financial impact on the bank because those misrepresentations diminished the value of the loan "as defined by [the bank's] standard lending practices." 86 F.3d 277, 284 (2d Cir. 1996). In *United States v. Rodolitz*, it did not matter that misrepresentations to an insurance company resulted in recovery greater than the defendant was entitled to because "the government needed to prove only that [the defendant] employed a deceptive scheme intending to prevent the insurer from determining for itself a fair value of recovery." 786 F.2d 77, 80-81 (2d Cir. 1986). And in *United States v. Yaron*, it did not matter that the bidder actually offered the lowest bid when the victim was denied the information that the bidder had paid bribes "to ensure that contracts were awarded to the defendants even where it might have been otherwise awarded to a different company," because the victim had "'been deprived of potentially valuable economic information.'" No. S2 10 Cr. 363 (GBD), 2012 WL 2477646, at *2 (S.D.N.Y. June 28, 2012) (quoting *United States v. Wallach*, 935 F.2d 445, 462-63 (2d Cir. 1991)). In sum, a victim has been defrauded of its right-to-control its assets when the defendant has deprived the victim of potentially valuable information relevant to its economic decision-making and not only when the misrepresentation in fact resulted in a higher price or lower quality service. *Finazzo*, 850 F.3d at 115; *Binday*, 804 F.3d at 574.

Here, the Government expects the evidence at trial to show that the defendants conspired to, and in fact did, misrepresent to Fort Schuyler that LPCiminelli and COR Development won their respective RFPs after a competitive procurement process. Indeed, the entire nature of the misrepresentation was to signal to Fort Schuyler that the best developer for its needs had been selected through an open and fair process, when in fact that process had been designed specifically to ensure the selection of certain developers favored by Kaloyeros. Moreover, the Government expects, for example, testimony Fort Schuyler's Board members that they understood that a competitive RFP process was valuable precisely because it would help establish that the selected vendor provided the best quality or price for the project, and that they believed that LPCiminelli and COR Development were selected after such a process. *See, e.g.*, *Levis*, 488 F. App'x at 486. Thus, the Government expects that the evidence at trial will prove that by representing to Fort

3

Schuyler that LPCiminelli and COR Development were selected based on a competitive RFP process, Kaloyeros and his co-conspirators deprived Fort Schuyler "of potentially valuable economic information it would consider valuable in deciding how to use its assets." *Finazzo*, 850 F.3d at 111.

                                                Respectfully submitted,

                                                GEOFFREY S. BERMAN
                                                United States Attorney

                                                By: /s/
                                                        Robert Boone
                                                        David Zhou
                                                        Matthew Podolsky
                                                       Assistant United States Attorneys
                                                       (212) 637-2208/2438/1947

cc: Counsel for all defendants (via ECF)